# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SARA CORDRY (01),

    Defendant.

Case No. 18-20033-01-DDC

## MEMORANDUM AND ORDER

This matter comes before the court on defendant Sara Cordry's Motion for Judgment of Acquittal on all counts (Doc. 142). The government has responded (Doc. 168), and defendant has filed a Reply (Doc. 172). For reasons explained below, the court defers its ruling on defendant's motion and sets the motion for oral argument.

**I.    Background**

On May 9, 2018, a grand jury returned an Indictment charging defendant with one count of conspiracy to commit wire and mail fraud, one count of mail fraud, and seven counts of wire fraud. Doc. 1. To support the conspiracy charge, the Indictment alleged the following: defendant and her coconspirators—doing business as the Arize Group, Incorporated—targeted homeowners who were in "financial difficulties with promises that the homeowners and others would be rescued from their homeowner financial problems." *Id.* at 3. Specifically, the Indictment alleged, the Arize Group made materially false and fraudulent promises to lower homeowners' mortgage interest rates, lower their monthly mortgage payments, or secure a loan modification for them. *Id.* Because Arize instructed victims to pay Arize directly—instead of paying their lender financial institutions—banks foreclosed on their houses, "causing financial

losses to the lender financial institutions." *Id.* at 5. The charged conduct in this case allegedly occurred between approximately November, 2010 and November, 2011. *Id.* at 2.

To support the charge in Count 2 (mail fraud), the Indictment alleged that defendant "placed and caused to be placed in an authorized depository for mail . . . a letter mailed from the Arize Group to Thomas M. . . . with that letter containing a formal offer and demand letter." *Id.* at 6. The Indictment alleged the following for Counts 3-9 (wire fraud):

| Count | Date | Description of Mailing |
|---|---|---|
| 3 | 03/30/2011 | E-mail from The Arize Group to James J. advertising loan audit package. |
| 4 | 04/12/2011 | Welcome E-mail from The Arize Group to James J. requesting financial documents. |
| 5 | 05/10/2011 | E-mail from The Arize Group, Inc. to James J. with attached Formal Offer and Demand Letter. |
| 6 | 05/23/2011 | Email from The Arize Group, Inc. to Mary J.S. with attached Formal Offer and Demand Letter. |
| 7 | 03/28/2011 | E-mail from The Arize Group to Delmar R. requesting financial documents. |
| 8 | 05/18/2011 | Email from The Arize Group to Bruce S. advising client [ ] that their documents were sent to The Arize Group "paralegal." |
| 9 | 5/19/2011 | Email from The Arize Group, Inc. to Bruce S. with attached Formal Offer and Demand Letter. |

*Id.* at 6–7.

Trial began on September 17, 2019. Doc. 133. After a nine-day trial, the jury convicted defendant on Counts 1-6, and Counts 8 and 9.[1] At the close of the government's case, defendant had orally moved for acquittal. Consistent with Fed. R. Crim. P. 29(b), The court reserved its ruling and ordered defendant to file a written motion and supporting papers. Defendant filed her

---

[1] The government dismissed Count 7 of the Indictment (wire fraud) at the close of its case.

Motion (Doc. 142), after trial, on September 26, 2019.[2] She argues the court should acquit her on all counts for two related reasons: (1) the government failed to prove beyond a reasonable doubt that the charged offense affected a financial institution, and (2) the government failed to prove beyond a reasonable doubt that the charged offense occurred within the statute of limitations. Doc. 142 at 1.

## II. Legal Standard

Fed. R. Crim. P. 29(a) provides: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Subsection (b) of this rule also authorizes the court to reserve decision on a Rule 29 motion and decide it after the jury returns a verdict. Fed. R. Crim. P. 29(b). But, when the court reserves judgment on such a motion, "it must decide the motion on the basis of the evidence at the time the ruling was reserved." *Id.*

When the court decides a motion for judgment of acquittal, it views the evidence in the light most favorable to the government. *United States v. Hughes*, 191 F.3d 1317, 1321 (10th Cir. 1999). The court must uphold a guilty verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Haber,* 251 F.3d 881, 887 (10th Cir. 2001) (emphasis in original). The court considers direct and circumstantial evidence, plus reasonable inferences drawn from that evidence. *United States v. Davis*, 1 F.3d 1014, 1017 (10th Cir. 1993).

---

[2] The government was unprepared to respond to defendant's motion at trial. And the government did not respond to defendant's written motion. On December 3, 2019, the court ordered the government to respond within 15 days. Doc. 167. The government filed its Response (Doc. 168) on December 18, 2019.

### III. Discussion

#### A. Legal Standard under 18 U.S.C. § 3293(2)

Generally, a five-year statute of limitations applies to mail and wire fraud charges under 18 U.S.C. §§ 1341 and 1343. But, 18 U.S.C. § 3293(2) extends the statute of limitations for mail and wire fraud under §§ 1341 and 1343—and conspiracy to violate these statutes—to 10 years "if the offense affects a financial institution." The government's response tacitly concedes that defendant's conduct occurred more than five years before the Indictment's return. So, to extend the statute of limitations to 10 years under 18 U.S.C. § 3293(2), any conviction required the government to prove that the charged conduct affected a financial institution.

In *United States v. Mullins*, 613 F.3d 1273 (10th Cir. 2010), our Circuit considered the meaning of the key phrase in § 3293(2)—"affect[] a financial institution." The Circuit held that this statutory language means that "the scheme to defraud exposes a financial institution to a new or increased risk of loss or causes the financial institution to suffer an actual loss." *Mullins*, 613 F.3d at 1278 (internal quotation marks and citation omitted); *see also United States v. Agne*, 214 F.3d 47, 52–53 (1st Cir. 2000) (defendant's actions did not affect a financial institution because bank suffered no actual or "realistic prospect" of financial loss). The Circuit explained that, in this context, the word "affect" means "simply to 'make a material impression on; to act upon, influence, move, touch, or have an effect on,'" or, "'to have a detrimental influence on'" a financial institution. *Mullins*, 613 F.3d at 1278 (first quoting I *Oxford English Dictionary* 211 (2d ed. 1989); then quoting *Webster's Third New International Dictionary* 35 (2002)).

But, the Tenth Circuit also recognizes that "there may be some point where the 'influence' a defendant's wire fraud has on a financial institution becomes too attenuated, so remote, so indirect that it cannot trigger the ten-year limitations period because it does not in any

meaningful sense 'affect' the institution." *Id.* (first citing *Agne*, 214 F.3d at 52, then citing *United States v. Pelullo*, 964 F.2d 193, 216 (3d Cir. 1992)). For example, the Circuit explained, merely using a financial institution as a conduit for funds is insufficient to establish that a scheme "affect[ed]" a financial institution. *Id.* In sum, the government must prove that the scheme to defraud exposed a financial institution to a new or increased risk of loss or caused the financial institution to suffer an actual loss.

Typically, the reported cases show, the government endeavors to establish this requirement by presenting testimony from a bank officer identifying how the defendant's conduct affected the officer's institution. Indeed, the government's brief never cites a case—and the court has not identified any case—where the government secured a conviction under § 3293(2) without testimony from an officer of an affected financial institution. *See Mullins*, 613 F.3d at 1279 (finding sufficient evidence to support jury verdict for 10-year wire fraud because the jury "heard . . . testimony from officers for each mortgage company, explaining how fraudulent information on a loan application increases the risk of loss to the lender and its parent bank"); *see also United States v. Serpico*, 320 F.3d 691, 695 (7th Cir. 2003) (explaining why bank made loan to defendant, which exposed it to risk of loss); *Agne*, 214 F.3d at 52–53 (concluding that bank officer's testimony failed to establish that bank faced any actual or prospective loss from defendant's conduct).

### B. Government's Evidence at Trial

The court's Instructions to the Jury included this "affected" requirement as an element for each count submitted to the jury. Doc. 153 at 16, 21, 23 (Instructions No. 11, 15, 16). The pertinent Instructions explained that a scheme affects a financial institution "if it exposes a

financial institution to a new or increased risk of loss or causes the financial institution to suffer an actual loss." [3] *Id.* at 16, 22, 24; *see also Mullins*, 613 F.3d at 1278.

But the government's evidence didn't include any testimony from an officer or other representative of a financial institution. So, defendant argues, the government failed to adduce any evidence that "such [an] institution suffered any loss or risk of loss." Doc. 142 at 4. This omission, defendant contends, means the five-year statute of limitations applies under §§ 1341 and 1343. Doc. 142 at 4. The government seems to concede that no trial evidence can support a conviction based on conduct occurring within five years of the Indictment.

Instead, the government's response argues that there is no shortcoming of evidence showing that defendant's conduct affected a financial institution. The government's response argues that several trial exhibits satisfy the requirement imposed by this element. The court has questions about all of the government's arguments and thus, sets the case for oral argument. Aiming to sharpen the parties' presentation at that argument, the court shares its preliminary analysis of the government's arguments, below.

### 1. "Agreement for Loan Audit Services"

First, the government asserts that defendant's "Agreement for Loan Audit Services"— admitted as Exhibit 1—establishes that defendant placed financial institutions at a new or increased risk of loss. The government's brief cites this excerpt from this exhibit:

> A. WHEREAS Company is in the business of providing an analysis of whether closed mortgage loans comply with the provisions, of, for example Real Estate Settlement Procedures ("RESPA"), Truth in Lending Act ("TILA"), Home

---

[3] The Instructions defined a "financial institution" as "(1) an insured depository institution; (2) a credit union; (3) a Federal home loan bank or a member of the Federal home loan bank system; (4) a System Institution of the Farm Credit System; (5) a small business investment company; (6) a depository institution holding company; (7) a Federal Reserve bank or a member bank of the Federal Reserve System; (8) an organization operating under the Federal Reserve Act; (9) a branch or agency of a foreign bank; or (10) a mortgage lending business or any person that makes in whole or in part a federally related mortgage loan." *Id.* at 16–17, 22, 24 (Instructions No. 11, 15, 16).

6

> Ownership and Equity Protection Act ("HOEPA"), Equal Credit Opportunity Act ("ECOA"), Gramm-Leach-Bliley Act ("GLB"), and certain other applicable statutes and guidelines (together the "Statutes" and "Guidelines"); and an analysis tool to determine the viability and method of any potential action by the Client (the "Analysis Tool") and
>
> B. WHEREAS Client wishes to engage Company to review their closed loans and determine if there were any violations of the Statutes and Guidelines and provide an analysis to determine the viability and method of any further action.

Doc. 168 at 4 (citing Gov. Ex. 1 at 3). The government asserts that this Agreement "lays out the many government statutes and regulations that affect financial institutions and how [Arize is] to interact with customers and offer [its] services." Doc. 168 at 4. The government's response never explains, though, how this Agreement's references to various federal laws and other unspecified federal "guidelines" proves that a financial institution was affected. That is, the government never explains how this exhibit proves or provides a basis for reasonable inference that a financial institution suffered a loss (or even an increased risk of loss). At the oral argument on defendant's motion, the court expects the government to explain the conclusion it derives from Exhibit 1. The explanation the government has provided to date is not sufficient.

### 2. "Authorization to Represent"

Next, the government argues that Arize's "Authorization to Represent" document establishes that defendant's scheme affected lending institutions. Doc. 168 at 5 (citing Gov. Ex. 1 at 10). According to the government, "this document set out the terms of the engagement between Arize and the client so that the client's lender would know Arize was authorized to act on their behalf." Doc. 168 at 5. The government cites this excerpt from Exhibit 1 as evidence that the scheme affected a financial institution:

> Dear Sir or Madam:
>
> I/We have authorized:

> ARIZE FINANCIAL GROUP, INCORPORATED,
> and/or it's representatives [*sic*] of
> 7300 West 110th Street, Suite 700
> Overland Park, KS, 66210
>
> To represent me/us and speak for me/us in all matters regarding the above referenced loan(s) and to request and receive documents in all matters regarding the above referenced loan(s). I request that all negative action (including negative credit reporting) against me stop immediately so that I/we can renegotiate my/our current loan with your company.

Doc. 168 at 5; Gov. Ex. 1 at 10. The government asserts that this letter, by informing lenders that defendant was authorized to negotiate on behalf of Arize's clients and "demand[ing] all negative action by the financial institution cease," is "clear evidence that defendant's scheme intended to and did affect lending institutions." Doc. 168 at 5. But the problem is that the government's brief never cites any evidence establishing that any of defendant's victims sent this letter to their lender or any other financial institution. And even if a bank or other financial institution did receive one of these letters, the government cites no evidence of how the letter affected the bank. Likewise, the government never identifies how this letter caused an actual loss or exposed a financial institution to a new or increased risk of loss. At oral argument, the government must support its assertion that this exhibit provides evidence supporting the inference the government would have the court draw from it.

### 3. Paul V.'s Testimony

The government asserts that "Paul V. testified that he believed the information sent to him from the defendant and [her] co-conspirators was accurate and believed that he and his family would receive a loan modification . . . ." Doc. 168 at 5. The government adds that Paul V.—a victim of defendant's conduct—testified he had considered not paying his mortgage, "but decided to continue to pay his mortgage after his wife advised that not paying was not an option for them." *Id.* at 6. Then, the government points to an email from Arize Financial Group to Paul

8

V. informing him that he had "qualified for a 27 year fixed interest rate of 2% that would yield monthly savings of $344.70 and save $11,682.80 over the lifetime of the loan." *Id.* (citing Gov. Ex. 18).

But that's where the government stops. It simply summarizes its view of Paul V.'s testimony without citing the record. The court is unwilling to rely on the government's generalized summary of the evidence to decide whether the government presented evidence sufficient for a rational juror to find that defendant's alleged scheme affected a financial institution.

And even if the government had provided a sufficient citation to the record, there is another critical problem. The government's brief never explains how Paul V.'s belief about his loan modification, or the terms that Arize represented to him, exposed a financial institution to an actual or prospective loss. The government does not specify which count of the Indictment this evidence supports. At oral argument, the government must explain how Paul V.'s testimony and the email from the Arize Group provide a basis for a jury to find that a financial institution faced an actual or prospective loss.

### 4. "Formal Offer and Demand Letter"

The government's response to defendant's motion asserts that Arize's "Formal Offer and Demand Letter" proved that defendant's conduct affected a financial institution. Doc. 168 at 6–8. Then, the government asserts that "[p]resumably, language in the demand letter was intended to spur the financial institution to act and ultimately modify the terms of the loan for the benefit of the borrower." *Id.* at 7–8. The government's brief cites Government Exhibit 104 as evidence. But the government never admitted Exhibit 104 into evidence. *See* Doc. 152-2 at 3 (Exhibit

9

Sheet).  The jury could not have relied on this exhibit to arrive at its guilty verdicts because it wasn't allowed to do so.

And even if the evidence included some other "formal offer and demand letter"—one that had been admitted into evidence (*e.g.*, Gov. Ex. 99, 106, 109, 110, 111, 116, 117)—the government never identifies any evidence showing that a bank contemplated or took any action because of this letter, or how this letter exposed the financial institution to any loss or risk.  *See, e.g.*, *Mullins*, 613 F.3d at 1280 (concluding that defendant's conduct exposed companies to a greater risk of loss "through the mechanisms the companies' officers described"); *Agne*, 214 F.3d 47 at 52 (bank officer's testimony about bank's practices and procedures failed to establish that defendant's scheme created loss or risk of loss).  If the government intends to rely on one of the "formal offer and demand letters," that was actually admitted, it must explain how this letter establishes that defendant's scheme affected a financial institution.

### 5.  "Hardship Letters"

Finally, the government's response asserts that the jury "heard evidence of Arize's clients being instructed to send 'hardship' letters to their lenders in order to convince the bank they were in need of a mortgage modification because of their dire financial situation."  Doc. 168 at 8.  To support this proposition, the government relies on a letter Mary P. Jarvis-Smith sent to her lender as evidence that defendant's scheme affected a financial institution.  The letter states, in part, the following:

> Since I had not received any word, in April, 2011, at the advice of family I contacted The Arize Group, Inc[.] of Shawnee, KS to assist me in obtaining the mortgage loan modification.  I paid these people $2988 for their services instead of paying IBM Lenders Services for two months, April and May, 2011.

Gov. Ex. 123 at 2.  The government asserts, albeit generally, that this evidence is consistent with the testimony of Arize and Reliant employees who told clients not to pay their monthly mortgage

10

payments, and consistent with testimony from alleged victims, who testified that they were told "not to make their payments and to pay Arize/Reliant instead." Doc. 168 at 8. The court cannot rely on the government's general characterization of witness testimony as evidence supporting defendant's conviction. And, even if the government can support its argument with a careful citation to the record, the court has concerns about the sufficiency of such evidence. Specifically, is fraud "directed against a customer of the depository institution which was then prejudiced in its dealings with the institution" too "unreasonably remote" to satisfy § 3293(2). *See Pelullo*, 964 F.3d 193, 216 (3d Cir. 1992). At oral argument, the government must address this question as well.

### C. Defendant's Evidence at Trial

Both parties assert that the defendant's testimony at trial and defense exhibits support their respective positions. Doc. 142 at 4; Doc. 168 at 8–10. But the court cannot consider defendant's evidence when ruling this motion. Defendant moved for acquittal at the close of the government's case. The court reserved its ruling until after the jury returned a verdict. Under Fed. R. Crim. P. 29(b), when the court reserves judgment, "it must decide the motion on the basis of the evidence at the time the ruling was reserved." Since the court reserved its ruling at the close of the government's case, it only can consider evidence the government presented at trial in its case in chief. *See United States v. Finn*, 375 F.3d 1033, 1037 (10th Cir. 2004) (holding that under Rule 29(b) the court "must decide the sufficiency question solely on the basis of the evidence presented by the government and without regard to the evidence presented by [defendant].").

## IV. Conclusion

The parties appear to agree that elements of the conspiracy, wire fraud, and mail fraud at issue here obliged the government to prove that defendant's scheme to defraud "affected a financial institution." Viewing the evidence in the light most favorable to the government, the government's brief has failed to convince the court that evidence in the trial record suffices to establish that a rational trier of fact reasonably could have found that defendant's scheme "expose[d] a financial institution to a new or increased risk of loss or cause[d] the financial institution to suffer an actual loss." *Mullins*, 613 F.3d at 1278. The court thus defers ruling the motion, and will conduct oral argument on January 30, 2020, at 9:00 a.m.[4]

**IT IS THEREFORE ORDERED THAT** the court will defer ruling the motion. And the parties will participate in oral argument on January 30, 2020, at 9:00 a.m.

**IT IS SO ORDERED.**

**Dated this 24th day of January, 2020, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**

---

[4] The court has selected this date for oral argument. If counsels' schedules are not amenable to this date, please contact Courtroom Deputy Megan Garrett at KSD_Crabtree_Chambers@ksd.uscourts.gov.